FILED

2022 APR 25 PM 2:21

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| PAUL L. MCMILLIN<br>564 Summit Way<br>Mt. Juliet, TN 37122<br><br>Plaintiff,<br><br>*v.*<br><br>LOWE'S HOME CENTERS, LLC<br>1000 Lowe's Boulevard<br>Mooresville, NC 28117 – 8520<br><br>Defendants. | } } } } } } } } } } } } } } } } } } } } } } } | **DOCKET NO:**<br>**03-22 0294**<br>—————————————<br>**CIVIL ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>(1) **NEGLIGENCE**<br><br>(2) **TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**<br><br>(3) **HOSTILE WORK ENVIRONMENT**<br><br>(4) **RETALIATION**<br><br>**[JURY TRIAL DEMANDED]** |

**Exhibit No. 1 (Attached) – Civil Cover Sheet**

Plaintiff Paul L. McMillin, 564 Summit Way, Mt. Juliet, Tennessee 37922 alleges the following:

1

# I.   NATURE OF THE ACTION

1.      This is an action for relief from employment discrimination in violation of Title VII of the Civil Right Act of 1964. As amended ("Title VII"). (Plaintiff, respectfully, reserves the right to amend this complaint to add additional violations.)

2.      Plaintiff alleges that Lowe's Home Centers, LLC whose true name is best known thru the State of Tennessee Business Registrar, unlawfully, by and thru company associate employees / managers and supervisors discriminated against Plaintiff on the basis of sex and thereafter, upon Plaintiff reporting the unlawful acts was negligent, created a hostile work environment and retaliated against Plaintiff.

3.      Plaintiff further alleges that Defendant policies, practices, decisions and training protocol; these in favor of an intentional and ever-present focus on increased company profits, combined to create an unlawful working environment and had a disparate impact upon Plaintiff to include but not limited to hostilities in the workplace and thereafter retaliation for bringing the unlawful activities to the attention of supervisors and managers and ultimately the Equal Employment Opportunity Commission.

4.      Plaintiff seeks injunctive and declaratory relief, compensatory damages, punitive damages, liquidated damages and costs as remedies for violation of Plaintiff's rights.

# II.   THE PARTIES

2

5. Plaintiff is a Caucasian, male, seventy years of age. Plaintiff has been employed by Defendant since January 2018. After the first two weeks of employment, Plaintiff was reassigned from customer service to the Millwork's Department, firstly at the Mt. Juliet, Tennessee, Store No. 2654 and then, upon promotion, to Sales Specialist-Millwork at Store 0390 in Hermitage, Tennessee, at present.

6. Defendant is a home improvement warehouse that sells building products and supplies.

7. Defendant operates more than Two-Thousand stores nationwide and employs as many as Three-Hundred Thousand employees as of year 2020.

8. At all times relevant herein, Defendant had at least One-Hundred Fifty employees at the Mt. Juliet (Store 2654) and the Hermitage (Store 0390).

9. Defendant is liable for the acts of its employees as set forth below.

10. Plaintiff is informed and believes and hereon allege that at all times relevant herein, Defendant is liable (thru its associates, supervisors and managers).

## III. JURISDICTION AND VENUE

11. This Court has jurisdiction of Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.

12. Venue is proper in, and Defendant is subject to the personal jurisdiction of, this Court because Defendant maintains facilities and conducts business operation in this District. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

3

## IV.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.  Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On or about January 26, 2022, the EEOC issue Plaintiff a Notice of Right to Sue.

14.  Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit; this to include a descriptive account of facts presented to the EEOC and thereafter made available to the Defendant.

## V.  FACTUAL ALLEGATIONS

### Negligence

15.  Plaintiff Paul L. Plaintiff is employed by Defendant.

16.  Plaintiff is assigned to the millworks department and works with Jennifer Weems (hereinafter Weems).

17.  Weems is also employed by Defendant.

18.  Plaintiff is a seventy-year-old male Caucasian.

19.  Weems is a forty-three-year-old female, Caucasian.

20.  Weems has a visibly apparent physiological disability related to epilepsy; this acknowledged by Weems.

21.  Weems informed Plaintiff of her disability and other facts related to her condition after Plaintiff observed Weems acting suspiciously during work hours.

4

22. In February 2020, Weems was hired by Defendant at the Hermitage, TN – (Store 390) as a Customer Service Representative and assigned to the appliance department.

23. Weem's hiring was effectively a re-hire after previous termination from Lowe'– Springfield, TN – Store 1747 as a Sales Specialist – Millwork, some two years prior.

24. As acknowledged by Weems, Weems was terminated as a "workplace hazard".

25. At Defendant's Hermitage, TN - Store 390, Weem's primary responsibility was maintaining the appliance department and supporting the sales specialist by down stocking appliances and overall maintenance of the appliance floor.

26. Although not her primary responsibility, Weems immediately began selling appliances.

27. After a period of several months, Weems was recognized by Defendant with a monetary award for achieving extraordinary sales.

28. In June 2020, Weems applied for and was promoted to Sales Specialist – Millwork at Hermitage, TN – Store 390 and thereafter transferred to the millwork department.

29. Plaintiff was the Sales Specialist – Millwork and had been in the position for approximately eighteen months.

30. After Weem's promotion, Plaintiff observed Weems regularly leave the millwork department to work the appliance department; these some seven departments and a considerable distance away from the millwork department.

31. The computerized work schedule clearly shows both Weems and Defendant were assigned to the millwork department as sales specialists.

32. Upon leaving millwork for appliances, Weem's millwork installation and special-order projects went largely unattended, and the ancillary duties of millwork, most often shared by both specialists, were left for Defendant to complete.

33. On a regular basis, Weems would document assigned replenishment tasks (IRP s) as "complete", but leave the tasks factually incomplete until Plaintiff began shift and make the corrections.

34. Customer returns and new stock doors and windows were often left unattended by Weems, creating obstructions and safety hazards for customers.

35. Defendant observed the department supervisor regularly directing Weems to the appliance department, leaving a multitude of ancillary task for Plaintiff to complete.

36. Upon reporting to the appliance department, Weems would log-in to the computer and register sales in her salesperson identification number.

37. Weem's appliance sales were credited to her individually and the appliance department.

38. None of Weem's appliance sales were credited to the millwork department.

39. Weems sold thousands of dollars in appliances and exceeded the sales of the assigned appliance specialists by thousands of dollars.

40. Weem's appliance sales were quadruple of those generated by Plaintiff who remained in the millwork department selling millwork products and completing the ancillary task as assigned.

41. Plaintiff further discovered that Weems was opening multiple Advantage Card credit accounts for customers as an accompaniment to appliance sales; a sales opportunity not available to Plaintiff in millworks due to a considerably lesser volume of customer traffic.

42. Since 2018, Defendant has awarded the performance of all employees with a quarterly pay addition called "Winning Together"; this as a "Thank You" for over-the-top sales dollar achievements.

43. On August 1, 2020 Defendant changed "Winning Together" to remove Sales Specialist from receiving any "Winning Together" monies.

44. Additional pay that sales specialist received from "Winning Together" was substituted with a "Sales Specialist Incentive." (This "Sales Specialist Incentive." was factually not an incentive but a non-discretionary bonus earned by sales specialist for selling products at a preset sales-per-hour goal.)

7

45. The "Sales Specialist Incentive" program provided a bonus, over and above employees regular hourly pay on a monthly basis, on condition that preset sales quotas for each specialist and each department were met.

46. The bonuses were not a competition between individual sales specialist in the departments, but a specific target for each sales specialist within his or her assigned department.

47. After the first month of the specialist incentive program, it was apparent that Plaintiff would receive little, if any, bonus because Weem's was abandoning the duties and responsibilities in millwork to sell appliances and leaving Plaintiff to complete the ancillary duties of the millwork department and address issues related to Weem's millwork projects in her absence.

48. Upon leaving the millwork department, Weems would go to the appliance department and log in to the appliance workstation to register sales.

49. Weems regularly stationed herself at the front of the appliance department and greeted potential appliance customer as they began looking at appliances.

50. Weems often engaged customers while one or both Sales Specialist – Appliances stood idle near their work stations.

51. Upon making the decision to purchase, Weems escorted customers to an appliance workstation and logged-on to the computer.

8

Case 3:22-cv-00294   Document 1   Filed 04/25/22   Page 8 of 21 PageID #: 8

52.     If the computer was logged on, Weems would change the salesperson identification to her sales number.

53.     Weems' sales were being credited to the appliance department and Weems, individually.

54.     None of Weem's sales activities in appliance were credited to the millwork department.

55.     Plaintiff's observations about never being able to achieve bonus as a result of Weem's sales in appliances were shared with Assistant Store Manager Kelly Pennington who responded, "We should all be happy for the sales she's making."; an obvious reference to the sales being generated by Weems in appliances and the contribution the sales made toward the store totals and all other employees as a whole.

56.     In August 2020, the department supervisor for millwork and appliances resigned his position and left Lowe's.

57.     During the first month of the "Sales Specialist Incentive" program (August 2020), more than half of Weem's sales were appliances and totaled tens of thousands of dollars.

58.     As Defendant struggled to complete customer service needs in millwork, many of which were the responsibility of Weems, Weems continued to leave millwork to work appliances.

59. On several occasions, Defendant located Weems in the appliance department after customer came to millworks in search of Weems.

60. Other employees observed Weem's presence in appliances and asked Plaintiff why she was working the appliance department.

61. Weem's absence from millwork created a substantial task overload for Plaintiff.

62. Weems often sold appliances to customers, closed the sale and continued to remain in the appliance department until the next customer approached; this in total disregard for required tasks needing completion in the millworks department.

63. Each and every month, Defendant provided a publication to all sales specialist outlining the individual sales achievements.

64. Weem's extraordinary sales numbers were regularly recognized by store management in e-mail accolades.

65. Plaintiff's discussions with supervisors about Weem's absence from millwork yielded no change.

66. As a direct result of Weems sales in appliance during August, Weems received a $400 bonus from the "Sales Specialist Incentive" program.

67. During the second month of the "Sales Specialist Incentive" program (September 2020), Weems continued devoting much of her time working appliances and thereafter again received the non-discretionary bonus.

68. On a regular basis, Plaintiff needed Weem's assistance in millworks and found her working appliances.

69. Weems regularly left her "Zebra" phone communication radio at millworks after turning the volume down so she could not be located in appliances.

70. Plaintiff regularly observed Weems advancing millwork projects and falsifying computer records to indicate that she had spoken to customers about the progress of a millwork project when she, factually, had not; this verified by the customers themselves.

71. Plaintiff personally witnessed Weems engaged in these falsifications on several occasions.

72. Plaintiff personally observed Weems making false entries in the Installed Management System notes.

73. At months end, Weem's was awarded another multi-hundred dollar pay addition for her individual sales achievements; the majority of which were from appliance sales.

74. Store management was aware of the exorbitant sales being generated by Weems in the appliance department yet issued another congratulatory e-mail for the accomplishment.

75. Despite Plaintiff's repeated advisement to managers about Weems vacating millwork to sell appliances, no corrective action was taken; this factually correct

11

Case 3:22-cv-00294 Document 1 Filed 04/25/22 Page 11 of 21 PageID #: 11

as Plaintiff continued to observe Weems leave the millwork department and work the appliance department.

76.    Repeated requests for meetings with management about these derelictions were ignored.

77.    During the third month of the "Sales Specialist Incentive" program (October 2020), Weems continued to regularly work appliances and was approached by the senior appliance department specialist and asked to return to the millwork department; this as the appliance specialist were not achieving their sales goals and making bonus as a direct result of Weem's transgressions.

78.    Weems personally told Plaintiff that the appliance specialist recognized that she (Weem's) sales in appliances were causing the appliance specialist bonus to be reduced or not achieved, at all.

79.    Weems volunteered this information to Plaintiff during a conversation about Plaintiff not receiving bonus money in the incentive program.

80.    After the discussion with the appliance specialist, Weem's immediately began substituting the loss of appliance sales and bonus with sales in other departments including walls and windows and flooring.

81.    In August 2020, Defendant discovered a particular project that had been sold by Weems.

82.     Plaintiff recalled the customer's name and realized that the project was one that Plaintiff had spent considerable time designing, but never sold.

83.     Upon reviewing the project file, Plaintiff discovered that Weem's had manipulated the project documents and computer entries to reassign the project in her name.

84.     A review of several other projects, originated by Plaintiff, revealed that Weem's had reassigned the projects, change the salesperson-of-record to her name and completed the sale.

85.     At no time did Weems give notice to Defendant that she was working the projects and did not receive permission from Plaintiff to do so.

86.     This activity was brought to the attention of the Assistant Store Manager Kelly Pennington who penned an e-mail directing the reassignments to cease.

87.     After Pennington issued the e-mail, Weems continued reassigning projects and changing computer records and project files.

88.     To date (from August 2020 to April 2022), Defendant has discovered multiple projects, totaling thousands of dollars in non-discretionary bonus that Weems has effectively stolen from Plaintiff.

89.     These thefts, undertaken by Weems have reduced or eliminated Plaintiff's qualification for receiving bonus.

13

90. The reassigned projects and resulting sales contributed to Weem's monthly sales totals and receipt of additional bonus payments, and deprived Plaintiff of the sale or any credit for work performed.

91. Weems abandonment of duties in Millwork caused an increased workload for Plaintiff in millwork.

92. Defendant has discriminated against Plaintiff and neglected oversight duties and responsibilities by continually permitting Weems to abandoned assigned millwork responsibilities and enabling Weems to make sales and receive additional money for herself (individually) and for the appliance department, while denying Plaintiff the same opportunity.

93. Because Plaintiff has not achieved the sales per hour for each of the months since the inception of the "Sales Specialist Incentive" program, Plaintiff's personnel file has been documented to indicate that Plaintiff is not performing the duties of his assigned position.

94. An entry in Plaintiff's August 2020 "Sales Specialist Incentive" program calculation stated: "Not Meeting Average Ticket and SPH Qualifier."

95. An entry in the September 2020 "Sales Specialist Incentive" program calculation stated: "Not Meeting Average Ticket and SPH Qualifier."

96. An entry in the October 2020 "Sales Specialist Incentive" program calculation stated: "Not Meeting Average Ticket and SPH Qualifier."

14

97.     Entries in Plaintiff's personnel filed (for the majority of months) since August 2020, indicate Plaintiff is "Not Meeting Average Ticket and SPH Qualifier."

98.     In every month since the inception of the "Sales Specialist Incentive" Weems has met or exceeded the pre-designated sales-per-hour by doubling or tripling sales working appliances or another department.

99.     At all times material to this action, Plaintiff was employed by Defendant as a Sales Specialist- Millwork at the Lowes retail store (Store 0390) located in Hermitage, Tennessee.

100.     Defendant has discriminated against Plaintiff by knowingly permitting Weems to neglect her assigned millwork position and duties, in millwork, and enabling Weems to make sales in appliances and receive non-discretionary bonuses for herself (individually) and for the appliance department, while denying Plaintiff the same opportunity.

## VI.    TITLE VII

### Hostile Work Environment

### Retaliation

101..     On October 30, 2020, Plaintiff was standing at the millwork desk when Weems positioned herself to Plaintiff's left, wrapped her arm around Plaintiff's waist and pulled Plaintiff toward her. Weem's commented, "What cha working on?"

102.     There was not prior notice of Weems pending actions.

103.     On October 27, 2020, Plaintiff was seated at the millworks desk when Weems approached Plaintiff from behind and began rubbing Plaintiff's shoulders in a squeezing-type movement. This activity was witnesses by the Department Supervisor who was standing at the millwork desk.

104.     On November 2, 2020, Plaintiff was walking in the exterior door isle when approached from behind and abruptly grabbed around the middle-chest / back area by Weems. This movement was extended by Weems pulling herself against Plaintiff's below- waist area and stagger steeping as she walked while pulling herself against Plaintiff's buttocks.

105.     Upon being grabbed, Plaintiff immediately grabbed her wrist and pulled forward, turning to the left and around nearly dropping several documents being carried.

106.     On November 3, 2020, Plaintiff was seated at the millwork desk and position facing the customer service desk, at which time Weems turned from a standing position (at the customer service desk), and turned toward Plaintiff. Weems moved toward Plaintiff and positioned herself where her right leg between Plaintiff's legs. Weems began rubbing her right leg against the inside of Plaintiff's right thigh as she said, "We need to hook-up." Plaintiff attempted to push backward, but was blocked. Plaintiff immediately turned toward the desk and away from Weems.

107.     Weems gave no advanced notice of her pending action and did not comment about the Incident thereafter.

COMPLAINT FOR EMPLOYMENT DISCRIMINATION

108    On November 1, 2020, Plaintiff received the first of three cell-phone text messages; these originating from Weem's cell phone.

109.    The first message was a heart – shaped emoji, red in color and in stationary position with text message.

110    The second message was a heart- shaped emoji, red in color that displayed a pulsating movement as if "beating".

111.    The third message was the text message, "I love you, Jenny" with a heart – shaped emoji, red in color at the end of the text.

112.    On November 6, 2020, Plaintiff reported the actions of Weems to Assistant Manager Pennington.

113.    After the report, Plaintiff was interviewed by Pennington and store manager David _____.

114.    The following day Pennington approached Plaintiff to advise that Weems was being relocated to the installed sales office; this without elaboration or further comment.

115.    Almost immediately, Weems began removing project files from the millworks file cabinet to another unknown location; this without comment from Weems.

116.    Weems, thereafter took on a visibly stand-offish approach toward Plaintiff, refusing to talk to Plaintiff, receive updated information from Weems customers and refusing to accept file amendments.

117. It was obvious to Plaintiff that Weems was aware of Plaintiff's complaint and immediately resulted in a unapproachable working relationship between Plaintiff and Weems.

118. After several attempts to locate Weems in the installed sales office; this for customers who had appointments or wanted to talk to Weems about pending projects, Plaintiff discovered that Weems was not working on millwork project in the installed sales office by selling appliances in the appliance department.

119. For months after Plaintiff's report to Pennington, Weems continued to work selling appliances.

120. Plaintiff soon discovered that Weems would work appliances during millwork staggered shift, leaving millworks task unattended.

121. Upon Plaintiff's arrival, Weems would, surprisingly, return to the millwork depart and began working millwork projects.

122. Plaintiff observed that Weems was selling thousand of dollar of appliances prior to Plaintiff's arrival.

123. Plaintiff observed the millwork section to be "trashed" with returns, unstock materials and carts of paneling and doors that should have been attended to prior to Plaintiff's arrival.

124. These observations were brought to the attention of various supervisors; to no avail.

125.     Weems advances were reported to Assistant manager Pennington who began an investigation.

126.     The investigation immediately resulted in a hostile work environment, as Weems immediately began not communicating with Plaintiff about pending projects.

127.     Weems also left the millwork department and began spending the majority of her time working appliances and leaving millwork tasks unattended.

128.     Supervisors from several department openly questioned Plaintiff about Weems not attending to millworks task.

## VII.  CLAIM FOR RELIEF

129.     Plaintiff incorporates by reference as if fully set forth herein the allegation contained in paragraphs 1 through 128.

129.     Title VII, 42 U.S.C. §2000e-2 prohibits discriminatory employment practices.

130.     As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic losses resulting in damages in an amount to be proven at trial.

131.     Defendant's unlawful actions were intentional, willful, malicious, and / or done with reckless disregard to Plaintiff's right to be free from discrimination based on sex.

## VIII.  PRAYER FOR RELIEF

19

132.     WHEREFORE, Plaintiff prays for relief as follows:

1.     For a declaration that Defendant's actions, policies, and practices as alleged are unlawful;

2.     For lost bonus monies and all other compensation denied or lost to Plaintiff by reason of Defendant' unlawful actions, in an amount to be proven at trial;

3.     For punitive damages in an amount to be proven at trial;

4.     For liquidated damages;

5.     For interest on lost wages, compensation, and damages, includingpre- and post judgment interest.

6.     For an Order enjoining Defendant from engaging in the unlawful acts complained of herein;

7     For cost and fees of this suit pursuant to 42 U.S.C. §2000e-5(k);

8.     For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action and claims to which they have a right to a jury trial.

20

Dated: April 25, 2022

Respectively submitted,

Paul L. McMillin, pro se

564 Summit Way

Mt. Juliet, Tennessee 37122