IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PAUL L. MCMILLIN, )
    Plaintiff, )
) Civil Action No. 3:22-cv-00294
v. ) Judge Trauger/ Frensley
)
LOWE'S HOME CENTERS, LLC, )
    Defendant. )

## REPORT AND RECOMMENDATION

This fee-paid, pro se employment action is before the Court on defendant Lowe's Home Centers, LLC'S (Lowe's) motion for summary judgment. Docket No. 36. Plaintiff opposes the motion and defendant has replied. Docket Nos. 43-44, 46. After reviewing the record and the briefs, the undersigned recommends defendant's motion be granted and Plaintiff's claims be dismissed.

### I.    BACKGROUND

In his second amended complaint, Plaintiff Paul L. McMillin, a customer service associate at Lowe's in Mount Juliet, Tennessee, asserts he was discriminated against based on his gender, male, arising from his employment at Lowe's. Docket No. 25. McMillin asserts claims for sex discrimination under the Equal Pay Act, 29 U.S.C. § 206(d)(1), and Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2. *Id.* pp. 17-18, 20-21. He asserts he was subjected to a sexually hostile work environment and was retaliated against for complaining about the discrimination and harassment. *Id.* pp. 19-20. He asserts a state law claim for negligence, contending Lowe's was negligent in allowing the sexual harassment, retaliation, and hostile work environment in the workplace. *Id.* pp. 21-23.

Lowe's now moves for summary judgment on all counts. Docket No. 36. In support of

its motion, Lowe's submitted as evidence excerpts of McMillin's deposition; the sworn declarations of Department Manager Chris Scherbak and Store Manager Teresse Elzie; and other documents. Docket No. 39-Appendix. The undersigned relies on the statement of facts presented by Lowe's in its motion. This statement of facts is supported by sworn testimony and supporting documents.

McMillin opposes the motion, reasserting his allegations. Docket Nos. 43-44. McMillin disputes approximately five of Lowe's 94 statements of facts, none of which are material, and does not to respond to the merits of Lowes's motion by affidavit or other evidence.

The uncontroverted evidence proffered by Lowe's reveals the following. McMillin was hired by Lowe's on January 29, 2018, as a Customer Service Associate at its Mount Juliet, Tennessee, store. Docket No. 39-1, p. 2. McMillin later applied for and was promoted to a Sales Specialist–Millwork (SSM) position on June 15, 2019, at Lowe's Hermitage, Tennessee, location. *Id.* pp. 4-6. SSMs are responsible for consulting with customers who are interested in purchasing interior doors, exterior doors, windows, and related products. *Id.* pp. 46-47. In addition to these sales duties, SSMs are responsible for monitoring inventory levels, displaying merchandise, and maintaining the cleanliness and safety of five aisles of merchandise located in the Millwork Department. Id. pp. 89-95.

The Lowe's Hermitage location employed two SSMs who generally worked split shifts, either 8:00 a.m. to 5:00 p.m. or 12:00 p.m. to 9:00 p.m. *Id.* pp. 15-16. During the times when no SSM was scheduled, supervisors or other Sales Specialists would assist customers in the Millwork Department. *Id.* pp. 16-18. For example, Lowe's also employed two Sales Specialists in each area of Appliances, Flooring, Cabinetry, and Plumbing. *Id.* p. 3. The Sales Specialists in Appliances, Cabinetry and Millwork reported to a single Dept. Supervisor. (*Id*.) The Dept.

2

Supervisor reported to an Assistant Store Manager (ASM), who then reported to the Store Manager. *Id.* p. 9-10. This reporting structure remained the same throughout McMillin's employment, although the individuals employed in the various roles changed over time as follows.

Art Thompson was Department Supervisor in Appliances, Cabinetry and Millwork Dept. Supervisor until approximately October 2020 when he was replaced by Chris Scherbak. Docket No. 39-1, 5, 8, 10-11. Scherbak (male) remained McMillin's Dept. Supervisor until approximately February 2023 when he was replaced by Robert Jacobs. *Id.* pp. 10-11. The ASM was initially Kelly Pennington (female), followed by Maria Polizzi as of May 15, 2021, Adele Mills as of January 29, 2022, and Drew Stark on June 4, 2022. *Id.* p. 9; Docket No. 39-3, at ¶¶ 4-7). The Store Manager was initially David Ballard through November 19, 2020. Docket No. 39-1, pp. 6-7; Docket No. 39-3 at ¶ 3. Teresse Elzie was hired as Store Manager on October 2, 2021. Docket No. 39-1, p. 10; Docket No. 39-3 at ¶ 2.

Jennifer Weems worked as a Customer Service Associate in the Appliance Department from February 8 through May 8, 2020. Docket No. 39-3 at ¶ 8. While selling appliances was not her job, Weems was known as a "hustler" because of her high-volume appliance sales, outpacing even the Sales Specialists in the Appliances Department and earning an award and bonus for her appliance sales. Docket No. 39-1, p. 26-27. In May 2020, Weems was promoted to SSM to work with McMillin and the pair were assigned identical job duties. Docket No. 39-3 at ¶ 9; Docket No. 39-1, pp. 14, 25. Weems assimilated well to SSM because she had three years of Millwork experience, however, McMillin noticed that almost immediately Weems began abandoning her SSM duties in order to make appliance sales, leaving him to perform Millwork inventory, cleaning, and stocking. Docket No. 39-1, pp. 26-30. McMillin approached Weems

3

about the matter and "she told [McMillin] to [his] face that it was all about the money … She was going to do whatever she had to make the money." *Id.* p. 40.

McMillin also believed that within weeks of her promotion Weems was changing the Sales ID to her name to credit herself for sales that he had generated. *Id.* pp. 38-39. Lowe's policy was to credit the sale to the employee who generated the detail/lead, i.e., made first contact, no matter who performed the rest of the work, i.e., reviewed the data, built the door/windows, and finalized the sale with the customer. *Id.* pp. 30-31. Around August 4, 2020, McMillin reported this concern to Pennington who in response sent an email to all Sales Specialists, including Weems, clarifying that Lowe's policy was to award the sale to the individual who generated the lead. *Id.* pp. 41-42.

Effective August 1, 2020, Lowe's Sales Specialists became eligible to participate in the Sales Specialist Incentive Bonus Plan (Bonus Plan). *Id.* pp. 43-45, 126-128. Under the Bonus Plan, Sales Specialists were rewarded with a cash bonus if they individually achieved or exceeded their Sales Per Hour Target (SPH Target) with the average ticket being above a certain minimum. *Id.* The more an employee's actual sales per hour exceeded the SPH Target, the higher the bonus payout. *Id.* p. 84. The SPH Targets were set by Lowe's Corporate Office and were consistent among departments. Docket 39-3 at ¶ 10.

On August 15, 2020, McMillin acknowledged the written Bonus Plan. Docket No. 39-1 pp. 44-45. SSMs had the lowest SPH Target of all departments, $280 per hour. *Id.* p. 35. Despite the SSM SPH Target being the lowest, McMillin believed it was unattainable. *Id.* p. 46. The Bonus Plan contemplated that Sales Specialists could make sales in other departments and states "Sales captured outside of the Specialists assigned department are eligible and counted towards the overall SPH performance." *Id.* p. 47. McMillin did not have the technical

4

experience needed to sell appliances; however, he did have the experience needed to sell cabinets, plumbing, electrical, roofing, and heating and air. *Id.* pp. 19-21. McMillin understood that Lowe's main goal was to make sales and was constantly counseled about how to "stop what you're doing and go get the money." *Id.* pp. 32, 56.

On November 6, 2020, McMillin reported to Pennington and Ballard that Weems had sexually harassed him based on the following:

> 1. On October 27, 2020, Weems approached Plaintiff while he was at the Millwork desk and began rubbing his shoulders in a squeezing-type movement;
>
> 2. On October 30, 2020, Weems approached Plaintiff while he was at the Millwork desk and wrapped her arm around his waist and pulled Plaintiff toward her while stating "what cha working on?";
>
> 3. On November 1, 2020, Weems sent Plaintiff a red heart-shaped emoji, a red beating heart emoji, and the text "I love you, Jenny" with another heart emoji;
>
> 4. On November 2, 2020, Weems grabbed Plaintiff around his waist while walking and stagger-stepped behind him while pulling herself against Plaintiff's buttocks; and
>
> 5. On November 3, 2020, Weems positioned herself between Plaintiff's legs while he was sitting, and rubbed her right leg against his thigh while stating "we need to hook up."

*Id.* pp. 48-51. While McMillin found this conduct offensive, he acknowledged that Weems is "a really, really personable gal" and "a hugger." *Id.* p. 36. Weems was an "equal opportunity hugger" and hugged Lowe's customers and employees equally. *Id.* pp. 36-37.

Pennington directed McMillin's complaint to Lowe's Associate Relations (AR), which is responsible for investigating and resolving employee complaints of this nature. *Id.* pp. 52-53; Docket No. 39-3 at ¶ 12. An AR Investigator reviewed McMillin's text messages and interviewed McMillin, Pennington, and Weems, as well as department supervisors Donald

Powell and Phillip Powell who McMillin had identified as witnesses. Docket No. 39-3 at ¶ 13; Docket No, 39-1 pp. 53-54. Weems denied engaging in any inappropriate conduct with McMillin.

Lowe's concluded that Weems's denial lacked credibility in light of her text messages to McMillin and witness statements. Docket 39-3 at ¶ 16. While Lowe's did not conclude that Weems had sexually harassed McMillin, it concluded she had violated Lowe's Standards of Conduct Policy. On November 20, 2020, Weems was issued a Final Written Warning and warned her she would be terminated if she engaged in other such violations. Docket No. 39-3 at ¶ 17; Docket No. 39-1 p. 54. After November 6, 2020, Weems did not hug McMillin or engage in any other sexual behavior towards him. Docket No. 39-1, p. 77. McMillin believed Weems should have been transferred to a different department although he did not make such a request to Lowe's at any time. Id. p. 76. Thereafter, McMillin complained to department supervisors Maria Polizzi and Adele Mills that Weems was neglecting her duties in millwork on numerous occasions so that she could make appliance sales. Docket No. 39-1. Pp. 33-34. McMillin testified at his deposition Weems told him on one occasion that her supervisor had directed her to work in Appliances, although he did not ask which supervisor or confirm the truth of Weems's statement with anyone at Lowe's. *Id.* at 55. McMillin did not know whether the supervisors addressed his concerns with Weems, although he assumed that Polizzi and Mills were ignoring his complaints because Weems was making very large sales for Lowe's. *Id.* pp. 34. McMillin also believed that Polizzi and Mills were deliberately directing unknown employees to leave carts of lumber and other items in the Millwork department so that he would be kept busy restocking and so that Weems could be left alone to make sales in appliances. *Id.* p. 78. McMillin testified that he restocked the merchandise himself rather than simply return the

merchandise to the correct department because "it's just the right thing to do … you just take care of the business." *Id.* p. 79. All employees in all departments are responsible for putting up or restocking merchandise. *Id.* p. 81.

On January 24, 2022, McMillin complained to AR regarding Weems leaving the Millwork Department and her statement that she was selling appliances to increase her bonus. *Id.* pp. 66-67; Docket No. 39-3 at ¶ 26. Lowe's does not have policy that prohibits employees from making sales outside of their assigned department. Docket 39-3 at ¶ 27; Docket No. 39-2 at ¶ 9. McMillin testified that he did not expect Weems to tell a customer shopping for appliances that she could not help them because she worked in Millworks. Docket No. 39-1 p. 56. However, he did not think it was right for Weems to abandon her Millwork responsibilities and leave him to do all the ancillary work such as stocking shelves, cleaning aisles, and completing sales. *Id.* pp. 69-70. After this, Scherbak monitored Weems's performance regarding her assigned duties and sent her multiple emails setting completion deadlines for certain tasks. Docket No. 39-2 at ¶¶ 10-11 and accompanying exhibits.

On April 20, 2022, McMillin informed Scherbak that Weems had improperly taken credit for a door sale for which he had created the original detail. Docket No. 39-1, 71-72; Docket 39-2, at ¶ 12. Scherbak emailed Weems, asking her to explain taking credit for the sale, but she did not reply. Docket 39-2, at ¶ 13. Scherbak told Mills that he believed Weems was ignoring him to avoid possible discipline. *Id.* Mills discussed the matter with Hank Sickles, the outside vendor who had generated the lead to Weems for that particular door sale. Docket No. 39-3, at ¶ 29. Sickles stated he gave the lead to Weems because he did not like working with McMillin and he was not comfortable using Lowe's software to build doors, so he was paying Weems $100 out-of-pocket to perform the work for him. Docket No. 39-3, at ¶ 28. Mills took the matter

to AR on April 26, 2022, who interviewed multiple employees as part of their investigation into the arrangement between Weems and Sickles. *Id.* at ¶ 30. While the investigation was pending, on May 21, 2022, Donald Powell informed Elzie and Scherbak that Weems had taken one of his sales. *Id.* at ¶ 31; Docket No. 39-1, p. 73. That same day, McMillin filed another complaint with AR, alleging that Weems was again taking his sales. Docket No. 39-1, p 74; Docket No. 39-3, at ¶ 32. AR reviewed their complaints as part of its investigation of Weems. Docket No. 39-3, at ¶ 33.

Weems was terminated from Lowe's effective June 3, 2022. Docket No. 39-3, at ¶ 35; Docket No. 39-1, p. 75. Lowe's concluded that regardless of whether Weems was wrongly coding sales under her own name rather than the salesperson who generated the detail, the fact that Weems had accepted out-of-pocket money from Sickles warranted her termination. Docket No. 39-3, at ¶ 34. Lowe's hired Lauren Turley, a female, for the opening on June 21, 2022. Docket No. 39-3 at ¶ 36; Docket No. 39-1, 82-83.

Lowe's reviews employee performance on the following scale: Exceeding Expectations, Meeting Expectations, and Does Not Meet Expectations. Docket No. 39-3, ¶ 37. Annual Merit Pay wage increases are based off this rating system; "Exceeding Expectations" results in the highest raise and "Does Not Meet Expectations" results in the lowest. *Id.* at ¶ 38.

In 2021 McMillin met or exceeded his Sales Per Hour (SPH) target 6 out of 12 months and was paid $1475 under the Bonus Plan. From January 1, 2022, through June 2, 2022, McMillin met or exceeded his SPH target 4 out of 6 months and was paid a total of $1,300. From June 3, 2022, through December 31, 2022, McMillin met or exceeded his SPH Target 3 out of 6 months and was paid $650. In 2023, (as of the date of the filing of the instant motion) McMillin met or exceeded his SPH Target once and has received $400. McMillin received the

following annual merit wage increases: (1) $0.54/hr. on March 21, 2020; (2) $0.58/hr. on March 21, 2021; (3) $0.59/hr. on March 19, 2022; (4) $0.60/hr. on December 10, 2022; and (5) $0.62/hr. on March 18, 2023. Docket No. 39-3, at ¶¶ 40, 42-46; Docket No. 39-2, at ¶ 6.

McMillin testified that his failure to make sales meant that he was not meeting the expectations of an SSM, and that his supervisors falsified his annual performance evaluations by rating him as "meets expectations" when his actual performance did not merit the rating. Docket No. 39-1, p. 57. McMillin also testified that from October 2020 through February 2023, supervisor Scherbak falsely inflated McMillin's Sales Per Hour by crediting him with sales which he had not earned. Docket No. 39-1, pp. 22-23. McMillin testified that because constructing doors, for example, does not generate sales dollars, on multiple occasions Scherbak sold items using McMillin's sales ID, instead of crediting the sale to himself or another salesperson. *Id*; Docket No. 39-2, at ¶ 7. Text messages from Scherbak to McMillin notifying McMillin of the credited sales reveal at least 10,000 in sales to due Scherbak's actions. Docket No. 39-1, p. 181-84. McMillin did not know whether Scherbak credited sales in this manner for other employees. *Id.* p. 24.

## II. DISCUSSION

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(a)*. If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). "In evaluating the

evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan,* 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, (1986)).

At this stage, "the judge's function is not ... to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson v. Liberty Lobby,* 477 U. S. 242, 249, 252 (1986). An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan,* 578 F. 3d at 374 (citing *Anderson,* 477 U. S. at 252).

A. **Title VII and Equal Pay Act Claims**

McMillin alleges claims for discrimination based on sex under the Equal Pay Act and Title VII. He claims that Lowe's application of the Bonus Plan resulted in unequal treatment because Weems was allowed to leave her assigned millwork position to work another department where she could make lucrative appliance sales and qualify for bonuses. He complains that Lowe's allowed Weems to "hustle," and to use her skills and experience to make appliance sales. He complains that Weems was stealing projects and sales belonging to him and transferring them to her name in order to achieve sales and bonuses. He asserts Lowe's treated him differently based on his sex. Docket No. 25, pp. 7-11, 17-18. 20-21.

"[W]hen an EPA claim and a Title VII claim arise out of the same set of underlying facts, both stating a charge of wage discrimination, 'the standards of liability under the two statutes are sufficiently similar' that the disposition with respect to the two claims should be the same." *Crowder v. Railcrew Xpress,* 557 F. App'x 487, 494 (6th Cir. 2014).

The Equal Pay Act (EPA) prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work. 29 U.S.C. § 206(d)(1). To establish a prima facie case of wage discrimination, the plaintiff must show that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Buntin v. Breathitt Cty. Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998), citing 29 U.S.C. § 206(d)(1)). "Equal work" does not require that the jobs be identical, but only that there exist "substantial equality of skill, effort, responsibility and working conditions." *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981). Whether the work of two employees is substantially equal "must be resolved by an overall comparison of the work, not its individual segments." *Id.* If the plaintiff is successful, the burden then shifts to the employer to prove, by a preponderance of the evidence, that the wage differential is justified under one of the four affirmative defenses provided by the EPA: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex. *See* 29 U.S.C. § 206(d)(1); *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). If the employer can carry its burden regarding an affirmative defense, the burden shifts back to the plaintiff to show pretext. *Id.*

McMillin cannot establish a prima facie case of wage discrimination because he cannot show his wage differed from that of Weems, his only female comparator, for equal work. McMillin testified that he and Weems had similar pay practices; both were assigned identical job duties requiring equal skill, effort, and responsibility; both worked the same rotating 8-hour shifts; both were paid similarly in hourly wage; both had identical SPH Targets; and both were subject to the Bonus Plan. Docket No. 39-1, 14-15, 25.

11

McMillin's assertion that Lowe's application of the Bonus Plan resulted in unequal treatment because Weems was permitted to leave millwork for the appliance department to make lucrative, bonus-qualifying sales, should be dismissed. "The EPA and the Sixth Circuit have made it clear that when comparing the compensation of male and female employees, the focus must be on their respective rates of pay, rather than their total compensation." *Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 755 (S.D. Ohio 2011), aff'd, 504 F. App'x 473 (6th Cir. 2012) (citing 29 U.S.C. § 206(d)(1), and *Bence v. Detroit Health Corp.*, 712 F.2d 1024 (6th Cir. 1983)). "For example, a case involving commissioned salespeople turns on the employees' commission rates, not the total commissions paid." *Id.* McMillin does not dispute that he and Weems were subject to the same commission rates under the Bonus Plan. Accordingly, this claim fails as a matter of law.

With respect to their actual job duties, McMillin seems to contend Lowe's allowed Weems to "hustle" to make appliance sales, denying him of the same opportunity. McMillin testified however, that he did not have the same sales skills as Weems and that he could not make the same sales in appliances because of it. Docket No, 39-1, p, 19. Thus, not only can McMillin not establish that he and Weems had unequal bonus rates under the Bonus Plan, he also cannot establish that he and Weems had "substantial equality of skill, effort, responsibility and working conditions" to establish his prima facie burden. 29 U.S.C. § 206(d)(1).

Even assuming McMillin could establish a prima facie case, the pay that he claims was inequitable resulted from Lowe's "system which measures earnings by quantity or quality of production." 29 U. S. C. § 206(d)((1)(iii). The Bonus Plan contemplates that sales made in other departments, by men and women alike, will be counted towards the individual's sales per hour. Docket No. 39-1, p. 47. McMillin, like Weems, sold items in other departments and was credited

for the sales. *Id.* Indeed, Scherbak credited McMillin with sales from departments outside millwork solely to assist McMillin achieve his SPH Target. Docket. No. 39-2, pp. 22-23. This is presumably something he would not have done if he wanted to discriminate against McMillin because of his sex. Further, the SSM SPH Target was the lowest of all Sales Specialists, meaning other female Sales Specialists, were required to sell more dollars than McMillin. *Id.* p. 35. There is no record evidence that Scherbak was assisting other female Sales Specialists or Weems, to reach their sales targets.

Finally, to the extent McMillin is alleging he was unable to reach his sales targets to receive bonuses because Weems stole his Millwork sales, this claim fails. There is no record evidence that at any time Lowe's condoned Weems's purported taking of sales. Further, Lowe's was in the midst of investigating Weems for her alleged taking of McMillin's and Powell's sales when it discovered Weems had accepted money under the table from another employee. In other words, Lowe's only paid Weems a bonus because she recorded sales, truthfully or not, not because it sought to discriminate against McMillin because he was a male. Third, contrary to McMillin's assertions that he could not achieve bonuses under the Bonus Plan, he did receive bonuses while Weems was still employed by Lowe's. Docket No. 39-3, at ¶¶ 40, 42-46; Docket No. 39-2, at ¶ 6.

On this undisputed record, McMillin cannot establish a pay disparity between himself and Weems. The undersigned recommends plaintiff's Title VII and EPA discrimination claims be dismissed as a matter of law.

**B.     Hostile Work Environment**

McMillin contends Weems's conduct toward him created a hostile work environment. To establish a hostile-work-environment claim, McMillin must show: (1) he was a member of a

protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based upon the employee's protected status, such as race or gender; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassing conduct but failed to take any corrective or preventive actions." *Michael v. Caterpillar Financial Serv. Corp.*, 496 F.3d 584, 600 (6th Cir. 2007). Actionable harassment arises where "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (alterations in original) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). When an employer responds to charges of coworker sexual harassment, the employer can be liable only if its response demonstrates "indifference or unreasonableness or indifference in light of the facts the employer knew or should have known." *Thompson v. Dacco, Inc.*, 2006 WL 2038007, *11 (M.D. Tenn. Jul. 19, 2006), citing *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872-73 (6th Cir. 1997). In the case of a coworker harassment, an employer is not held liable for the act of harassment, but rather for the inappropriate response to the charges of harassment. *Id.*

McMillin cannot establish the fourth and fifth elements of his prima facie case under this standard. The court considers the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance and whether it unreasonably interferes with an employee's work performance. *Newman v. Federal Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001). Isolated and sporadic incidents, unless extremely egregious, will not rise to the level of unlawful sexual harassment. *Id.*

McMillin alleges three separate incidents. On October 27, 2020, Weems rubbed his shoulders with her hands. On November 1, 2020, Weems sent him a text with heart emojis and

the phrase "I love you, Jenny." Finally, on November 3, 2020, Weems rubbed her right leg against McMillin's thigh while stating "we need to hook up." Docket No. 25, pp. 11-13.

The undersigned concludes these three isolated incidents are not sufficiently severe or pervasive to unreasonably interfere with McMillin's employment or to constitute a hostile environment. *Cf. Hudson v. M.S. Carriers, Inc.*, 335 F.Supp.2d 853, 857 (W.D. Tenn. 2003) (finding following conduct not sufficiently severe and pervasive to establish a sexual harassment claim: asking what kind of panties plaintiff she was wearing; telling plaintiff that he went to a strip bar and swiped the stripper's rear end with his credit card; calling plaintiff into his office to show her his "fake penis," which was a pencil that he put close to his private area; removing his shoe and touching plaintiff with his feet under her desk on at least three occasions; striking plaintiff on the shoulder; wetting his finger and sticking it in plaintiff's ear; commenting that he wanted to "make oreo cookies, " a statement understood as expressing a desire for intercourse; asking plaintiff to climb onto a truck so that he could see her underwear; inquiring as to whether plaintiff's panties matched her shirt; and grabbing plaintiff's shoulder as she walked by.) *Id.* at 857; *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 786-87 (6th Cir. 2000) (finding the following conduct insufficient to establish hostile working environment: jokes with sexual overtones; calling plaintiff "hot lips"; commenting several times on plaintiff's clothing; suggesting that plaintiff could improve her evaluation ratings by performing sexual favors; visiting plaintiff's worksite fifteen times; telephoning plaintiff on at least thirty occasions; looking into plaintiff's window and making faces at her; throwing roofing nails on plaintiff's driveway; and following plaintiff home and giving her "the finger"); *Bowman v. Shawnee State University*, 220 F.3d 456, 464 (6th Cir. 2000) (rubbing plaintiff's shoulder, grabbing plaintiff's buttocks, pushing plaintiff, and making several suggestive remarks was not severe or pervasive

enough to create a hostile work environment).

As to the fifth element, McMillin cannot establish that Lowe's knew or should have known about Weems's conduct and failed to take prompt and effective corrective action. McMillin reported Weems's conduct to Pennington and Ballard on November 6, 2020, and they referred the complaint to AR the same day for investigation. After an investigation, Lowe's concluded that Weems had not sexually harassed McMillin. However, Lowe's issued Weems a Final Warning to refrain from hugging or inappropriately touching other associates, customers, vendors, and suppliers. Docket No. 39-01. p. 123. Weems heeded the warning, and as McMillin testified, Weems did not engage in any further purported harassing behaviors after November 6, 2020. *Id.* The undisputed evidence shows that Lowe's actions immediately ended the alleged harassment, and therefore Lowe's has satisfied its obligations under Title VII. *Courtney v. Landair Transport, Inc.*, 227 F.3d 559, 565 (6th Cir. 2000) (employer was not liable for coworker harassment when the employer's action following notice of the alleged harassment successfully ended the conduct.).

McMillin cannot as a matter of law establish a prima facie case of hostile work environment. The undersigned recommends that Lowe's be granted summary judgment on McMillin's claim alleging a hostile work environment.

### C. Retaliation Claim Under Title VII

The prima facie elements of a retaliation claim are similar but distinct from those of a discrimination claim. To establish his prima facie case, McMillin must show that (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a

causal connection between the protected activity and the adverse employment action or harassment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (emphasis omitted). The Supreme Court has held that a plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context. *Burlington Northern & Santa Fe Railway v. White,* 548 U.S. 53 (2006). A materially adverse employment action in the retaliation context consists of any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quotation marks omitted).

Here, McMillin fails to establish the third and fourth elements of his prima facie case. McMillin asserts Polizzi and Mills retaliated against him for complaining that Weems was sexually harassing him and abandoning her job duties in order to make appliance sales. He asserts carts of lumber and other items appeared in the Millwork aisles and that he was told to restock the items after he complained. McMillin testified that he did not know who put the carts there but thought that it was Polizzi and Mills so that Weems could continue making sales for the company. Docket No. 39-1, pp. 79-80.

McMillin has not established he suffered a materially adverse action. "De minimus employment actions are not materially adverse and, thus, not actionable." *Blackburn v. Shelby Cnty.*, 770 F. Supp. 2d 896, 925 (W.D. Tenn. 2011) ("The Supreme Court has limited 'adverse employment actions' to something more than 'petty slights, minor annoyances, and simple lack of good manners.'"), citing *Burlington Northern*, 548 U.S. 68. A reassignment, a negative public perception concerning a transfer or a particular job, a transfer to a position with different responsibilities, semantic changes in title, and the bruising of ego did not, without more, rise to the level of 'materially adverse changes' in the terms of employment." *Id.* "This is true even if

the employment action has the effect of making the plaintiff's job more difficult." *Id.*

McMillin testified that all salespeople were required to put up merchandise "all of the time" and that he could have returned the cart to the correct aisle and department for someone else in the correct department to restock but he chose to restock the items himself. Docket No. 39-1, p. 79. He testified that these types of tasks were common due to staffing issues and that he was more than willing to assist customers and fellow associates as needed. *Id.* p. 87. On this record, the undersigned concludes McMillion has not established an adverse action.

Even assuming he had, McMillin must show a causal connection by "proffer[ing] evidence sufficient to raise the inference that the protected activity was the likely reason for the adverse action." *Evans v. Prospect Airport Serv. Inc.,* 286 Fed. Appx. 889, 894-95 (6th Cir. 2008) (citing *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007) (citations omitted)). Plaintiff asserts Polizzi and Mills were giving him busy work so that Weems could make sales. Docket 39-1, p. 80. McMillin merely speculates, however, and provides no evidence in support of his argument. Moreover, McMillin admits no causal connection exists; the job assignments were unrelated to his complaints and were directives by Polizzi and Mills so that McMillin would leave Weems alone so that she could make sales for the store in the appliances department. Docket No. 39-1. P. 80. *Cf., Evans*, 286 Fed. Appx. at 895 (rather than setting forth specific facts which would justify an inference of causation, plaintiff only offered unsupported allegations that he was retaliated against on account of his filing of EEOC complaints). Without a causal connection, McMillian has failed to establish his retaliation claim as a matter of law. The undersigned recommends Lowe's be granted summary judgment.

D. **State law Negligence Claim**

McMillin finally asserts Lowe's was negligent in allowing the sexual harassment,

18

Case 3:22-cv-00294   Document 51   Filed 05/13/24   Page 18 of 20 PageID #: 831

retaliation, and hostile work environment in the workplace. Docket No. 25, p 22. While Tennessee recognizes a tort of negligent supervision, making an employer liable for a tort caused by an intentional act of an employee acting outside of employment, the injury must be foreseeable. *Hays v. Patton Tully Transp. Co.*, 844 F. Supp. 1221, 1222 (W.D. Tenn. 1993) (on motion to dismiss, analyzing case law from Tennessee and other jurisdiction and holding that Tennessee courts would recognize a claim for negligent supervision arising out of an employee's act of sexual harassment). McMillin has not come forward with any evidence that Lowe's had knowledge of any complaints of Weems's inappropriate physical conduct before he complained. Further, McMillin does not provide any evidence that he reported any retaliation on the part of Mills and Polizzi at any time during his employment. The conduct complained of, therefore, was not foreseeable to Lowe's and does not support a negligent supervision claim. *See, Beightler v. SunTrust Banks, Inc.*, No. 2:07-CV-02532-V, 2008 WL 11411788, at *11 (W.D. Tenn. Dec. 29, 2008). This claim should be dismissed as a matter of law.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends that Defendant Lowe's Home Centers, LLC's motion for summary judgment, Docket No. 36, be **GRANTED** and the claims against it be **DISMISSED WITH PREJUDICE.**

The undersigned further recommends that McMillin's motion for a trial date and issuance of subpoenas, Docket No. 49, be **DENIED.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said

objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**